UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:08-CR-135-KKC-HAI-2 |
| | ) | No. 5:13-CV-7300-KKC-HAI |
| v. | ) | |
| | ) | ORDER |
| CLARENCE MCCOY, | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

On August 5, 2013,[1] Defendant Clarence McCoy filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. D.E. 205. The United States filed a response to Defendant's Motion on December 20, 2013. D.E. 220. The Court ordered that any reply by Defendant be filed on or before February 22, 2014. D.E. 221. Defendant filed his reply on February 20, 2014.[2] D.E. 224. Pursuant to local practice and 28 U.S.C. § 636(b)(1)(B), this matter was referred to the undersigned for a recommended disposition. For the reasons that follow, Defendant has failed to establish that he is entitled to relief pursuant to 28 U.S.C. § 2255. Therefore, the Court **RECOMMENDS** that his motion be **DENIED**. The Court further **RECOMMENDS** that no Certificate of Appealability be issued.

---

[1] Although Defendant's Motion was not docketed by the Clerk until August 9, 2013, Defendant declared under penalty of perjury that he placed the motion in the prison's mailing system on August 5, 2013. D.E. 205 at 9. Thus, the Court treats the motion as having been filed on August 5, 2013. *See Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999) (applying the prison mailbox rule of *Houston v. Lack*, 487 U.S. 266, 270–72 (1988) to section 2255 motions).

[2] Again, because Defendant declared under penalty of perjury that he placed his reply in the prison's mailing system on February 20, 2014, the Court treats the reply as having been filed on that day, rather than on March 10, 2014, when it was docketed by the Clerk. *See United States v. Aguirre*, 245 F. App'x 801, 803 n.2 (10th Cir. 2007) ("Incidentally, the reply appears timely filed under the prison mailbox rule.").

# I. BACKGROUND

On June 12, 2008, a federal grand jury returned an indictment as to Clarence McCoy, as well as his co-defendants John McQueen, Scott Tyree, Anthony Estep, and Kristine Lafoe. D.E. 1. Eight counts were returned, but only three were returned as to Defendant, specifically Count 1, conspiracy to violate civil rights under color of law, in violation of 18 U.S.C. § 241; Count 7, aiding and abetting a co-defendant to violate civil rights under color of law by physically assaulting a pre-trial detainee, namely B.H.,[3] in violation of 18 U.S.C. §§ 2 and 242; and Count 8, aiding and abetting a co-defendant to knowingly falsify official reports concerning the use of physical force upon a pre-trial detainee, again, B.H., with intent to impede, obstruct, and influence the investigation and proper administration of that matter, in violation of 18 U.S.C. §§ 2 and 1519. *Id.* As to each of Counts 1 and 7, Defendant faced a maximum term of incarceration of ten years, a fine of $250,000, and a term of supervised release of not more than three years. 18 U.S.C. 241; § 3571(b)(3); § 3583(b)(2). As to Count 8, Defendant faced a maximum term of incarceration of twenty years, a fine of $250,000, and a term of supervised release of not more than five years. 18 U.S.C. 1519; § 3571(b)(3); § 3583(b)(1).

The indictment alleged that Defendant and his co-Defendants worked in the Fayette County Detention Center, wherein Defendant, co-Defendant Tyree ("Tyree"), and co-Defendant McQueen ("McQueen") used excessive force on non-aggressive, compliant pre-trial detainees, effectively assaulting them. D.E. 1 at 1–7. Co-Defendant Estep ("Estep") and co-defendant Lafoe ("Lafoe") were not alleged to have participated in the assaults, but rather to have failed to intervene, falsified reports, failed to write incident reports, and in other ways supported the use of excessive force on the part on Defendant, McQueen, and Tyree. *Id.*

---

[3] B.H. refers to Bruce Mulcahy, a pretrial detainee who was involved in an incident at the Fayette County Detention Center on September 13, 2006. *See* D.E. 138 at 2 (descriptions of Exhibits 21a and 21b).

## A. Pre-trial Proceedings

Defendant appeared for his initial appearance and arraignment pursuant to a summons on June 23, 2008. D.E. 25. At that time, Jason Rapp of Franklin & Rapp appeared on behalf of Defendant and McQueen, and Defendant filed a Waiver of Multiple Representation. D.E. 32. A pretrial conference in this matter occurred on May 18, 2009. D.E. 105. At that time, Judge Caldwell scheduled the jury trial of the case for September 21, 2009. *Id.*

On June 18, 2009, the United States filed a Motion for Hearing Pursuant to Fed. R. Crim. P. 4(c) and to Disqualify Defense Counsel. D.E. 108. The United States' Motion stated that though both Defendant and McQueen had signed waivers as to multiple representation, such waivers were insufficient under Sixth Circuit case law, and that even if Defendant and McQueen did properly waive any conflicts, the Court was not bound by the waiver if an actual conflict or serious potential for conflict existed. *Id.* The United States further averred that an actual conflict did exist in the case as a result of plea negotiations, and that further serious potential conflicts would exist if both Defendant and McQueen elected to continue to trial. *Id.*

During a hearing on the motion on August 24, 2009, Judge Caldwell appointed Andrew Stephens for Defendant for the purposes of that hearing only. D.E. 114. Following the hearing, Judge Caldwell issued an order, which stated her finding that an actual conflict existed at that point. D.E. 116. Thus, Judge Caldwell granted the United States' motion and ordered Defendant and McQueen to acquire separate counsel to represent them and have counsel file a notice within 45 days from the entry of the Order. *Id.* On November 18, 2009, Judge Caldwell appointed Andrew Stephens as Defendant's attorney pursuant to the Criminal Justice Act. D.E. 124. A second pretrial conference in this matter occurred on February 2, 2010. D.E. 127.

## B. Trial and Sentencing

Defendant and McQueen's trial began on May 10, 2010, and took place over four days. *See* D.E. 132; D.E. 133; D.E. 134; D.E. 135. The United States began its production of evidence on May 10, 2010, with testimony of one witness and the introduction of several exhibits, including two video recordings and a number of inmate incident reports. D.E. 138. During the second day of trial, seven witnesses testified on behalf of the United States and 22 exhibits were admitted. *Id.* The third day of trial saw the conclusion of the United States' case in chief and the presentation of evidence by McQueen. D.E. 134. The United States called its final three witnesses and filed twelve exhibits. D.E. 138. The Court also filed an exhibit. *Id.* Defendant McQueen testified in his own defense (D.E. 184 at 214–45), and was cross-examined by the United States (*Id.* at 245–74). McQueen filed one exhibit. D.E. 138. On the final day of trial, Defendant testified in his own defense (D.E. 185 at 11–52), followed by cross-examination by the United States (*Id.* at 52–73).

Judge Caldwell excused the jury to deliberate at 2:56 p.m. on May 13, 2010. *Id.* at 100. The jury returned at 3:53 p.m. and announced that it had found Defendant and McQueen guilty as to all charges against them. *Id.* at 102–03. Judge Caldwell scheduled a sentencing hearing as to both Defendant and McQueen for August 31, 2010. *Id.* at 104–05.

By Judgment dated September 1, 2010, Judge Caldwell sentenced Defendant to 120 months of incarceration on each of the three counts, to run concurrently, to be followed by two years of supervised release. D.E. 173. Judge Caldwell found that a sentence of 120 months, which constituted a 31-month downward departure as to Count 8, was sufficient but not greater than necessary to comply with the goals of 18 U.S.C. § 3553(a) for three reasons: 1) "virtually any sentence of imprisonment would serve to protect the public from further crimes of this

defendant," 2) 120 months accurately reflected the seriousness of the offense and was sufficient to promote respect for the law and provide just punishment, and 3) 120 months afforded deterrence to any similarly situated person.  D.E. 190 at 54–55.

## C. Direct Appeal

On September 7, 2010, Defendant filed a Notice of Appeal.  D.E. 174.  On joint appeal, Defendant and McQueen alleged four errors on the part of the Court: 1) improper disqualification of retained counsel; 2) improper calculation of their base offense levels; 3) improper application of a two-level-offense-level increase for use of physical restraints; and 4) imposition of an unreasonable sentence.  *United States v. McCoy*, 480 F. App'x 366, 369 (6th Cir. May 8, 2012); D.E. 194 at 5.

As to the first claim, the Court of Appeals for the Sixth Circuit noted that Judge Caldwell "correctly recognized the actual conflict in the joint representation of McCoy and McQueen . . . and correctly anticipated the serious potential for conflict at trial."  *McCoy*, 480 F. App'x at 370; D.E. 194 at 7.  The Sixth Circuit further found that Judge Caldwell had properly balanced the Sixth Amendment rights to counsel of one's choice and counsel who is free of conflicts of interest, and "took appropriate measures to ensure the latter would not cede to the former." *McCoy*, 480 F. App'x at 370–71; D.E. 194 at 7.  Thus, concluded the Sixth Circuit, Judge Caldwell did not abuse her discretion when she disqualified Jason Rapp as counsel for Defendant and McQueen.  *McCoy*, 480 F. App'x at 371; D.E. 194 at 7–8.

As to the second claim, Defendant and McQueen argued that the offense of conviction established only minor assault, not aggravated assault, therefore the U.S. Sentencing Guidelines § 2A2.3, rather than § 2A2.2 applied, and thus that their offense levels were improperly calculated.  *McCoy*, 480 F. App'x at 371–72; D.E. 194 at 8–9.  The Sixth Circuit noted that while

Defendant and McQueen were correct regarding the category of assault contained in the offense of conviction, the offense-guideline section applicable to the crime is not both the beginning and end of a defendant's offense level. *McCoy*, 480 F. App'x at 372; D.E. 194 at 9–10. Instead, "an offense level includes, among other things, . . . consideration of 'all acts and omissions committed . . . by the defendant.'" *McCoy*, 480 F. App'x at 372 (quoting U.S. Sentencing Guidelines manual § 1B1.3(a)(1)(A)); D.E. 194 at 10 (same). All acts and omissions committed by the defendant are also used to determine "any appropriate specific offenses characteristics, cross references, and special instructions." *McCoy*, 480 F. App'x at 372 (quoting U.S. Sentencing Guidelines manual § 1B1.1(b)) (internal quotation marks omitted); D.E. 194 at 10 (same). The Court noted that § 2A2.3(c)(1) cross-references § 2A2.2 based on conduct, and that "the district court found that McCoy and McQueen's conduct was aggravated assault, . . . and McCoy and McQueen do not challenge that factual finding." *McCoy*, 480 F. App'x at 372; D.E. 194 at 10. Thus, concluded the Sixth Circuit, the district court correctly applied § 2A2.2, and the argument that Defendant's and McQueen's base offense levels did not match the jury instructions failed. *McCoy*, 480 F. App'x at 372; D.E. 194 at 10.

As to their third claim, Defendant and McQueen argued that Judge Caldwell should not have applied a two-level-offense-level increase for the use of physical restraint per U.S. Sentencing Guidelines § 3A1.3, as restraint is included in the "color of law" enhancement in § 2H1.1(b)(1)(B) because the victims were pretrial detainees, and thus necessarily restrained. *McCoy*, 480 F. App'x at 372; D.E. 194 at 11. Defendant and McQueen argued that application of the physical restraint enhancement was double-counting. *McCoy*, 480 F. App'x at 372; D.E. 194 at 10. The Sixth Circuit noted that "'under color of law' generally means that a government agent acts under official authority," while "physical restraint is defined as 'forcible restraint of

the victim such as being tied, bound, or locked up.'" *McCoy*, 480 F. App'x at 372 (citations omitted); D.E. 194 at 11 (same). Thus, concluded the Sixth Circuit, "[a]n offense committed under color of law does not necessarily include physical restraint, and in this case, both enhancements were applicable to the same conduct without double conducting." *McCoy*, 480 F. App'x at 373; D.E. 194 at 11–12.

Defendant and McQueen's final claim on direct appeal was that their sentence of 120 months of incarceration was unreasonable, particularly in light of the sentences of co-defendants Lafoe and Tyree. *McCoy*, 480 F. App'x at 373; D.E. 194 at 12. The Sixth Circuit noted that "consideration of co-defendant sentencing disparity is purely discretionary," and that Defendant and McQueen were not similarly situated to their co-defendants. *McCoy*, 480 F. App'x at 373; D.E. 194 at 12. The Court also noted that 10 years of incarceration was "not substantively unreasonable for McCoy and McQueen's egregious conduct: flagrant abuse of defenseless, restrained victims by persons entrusted with positions of authority." *McCoy*, 480 F. App'x at 373–74; D.E. 194 at 13. The Sixth Circuit affirmed Defendant and McCoy's convictions and sentences, having rejected each of their four arguments. *McCoy*, 480 F. App'x at 374; D.E. 194 at 13. The Sixth Circuit's Opinion was filed on May 8, 2012. *McCoy*, 480 F. App'x at 366; D.E. 194 at 1.

### D. Post-conviction Proceedings

On August 9, 2013, Defendant filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. D.E. 205. In his Motion, Defendant asserts 31 bases for relief:

1. That the government failed to put forth sufficient evidence to prove a conspiracy to deprive rights under the color of law. D.E. 205 at 2.

2. Ineffective assistance of counsel as to the claim above. *Id.*

3. That the government put forth insufficient evidence to prove that Defendant had the requisite "specific intent" under 18 U.S.C. § 241. *Id.*

4. Ineffective assistance of counsel as to the claim above. *Id.*

5. That errors in the final jury instructions as to 18 U.S.C. § 241 lessened the government's burden of proof and negated the basis for the jury's finding of specific intent. *Id.*

6. Ineffective assistance of counsel as to the claim above. *Id.* at 3.

7. That Defendant was prejudiced by "spillover evidence" from the government's case-in-chief against McQueen that would have been inadmissible against Defendant had their trials been severed. *Id.*

8. That trial counsel provided ineffective assistance of counsel by failing to move to sever Defendant's trial from McQueen's. *Id.*

9. That the government put forth insufficient evidence to prove that Defendant acted in contemplation of a federal investigation or matter as required by Instruction No. 30. *Id.* at 4.

10. Ineffective assistance of counsel as to the claim above. *Id.*

11. That the government failed to prove that Defendant intended to impede, obstruct, or influence an investigation as required by Instruction No. 30. *Id.*

12. Ineffective assistance of counsel as to the claim above. *Id.*

13. That Instruction Nos. 29 and 30 contained erroneous statements that confused and misled the jury as well as negated the jury's duty to decide whether Defendant had the requisite specific intent needed for a conviction under 18 U.S.C. § 1519. *Id.*

14. Ineffective assistance of counsel as the above claim. *Id.*

15. That 18 U.S.C. § 1519 is facially void for vagueness. *Id.* at 4–5.

16. That the government put forth insufficient evidence to prove that Defendant had the requisite "specific intent" under 18 U.S.C. § 242. *Id.* at 5

17. Ineffective assistance of counsel as to the claim above. *Id.*

18. That the government did not prove that Defendant acted willfully as needed for a conviction under 18 U.S.C. § 242. *Id.*

19. Ineffective assistance of counsel as to the claim above. *Id.*

20. That errors in Instruction No. 22 regarding 18 U.S.C. § 242 lessened the government's burden of proof and negated the basis for the jury's finding of specific intent. *Id.*

21. Ineffective assistance of counsel as to the claim above. *Id.*

22. That appellate counsel provided ineffective assistance of counsel by failing to raise the issue of insufficient evidence, particularly regarding the element of specific intent, as to all three counts. *Id.* at 6.

23. That trial counsel provided ineffective assistance of counsel due to a conflict of interest and failure to withdraw once the conflict was discovered. *Id.*

24. That appellate counsel provided ineffective assistance of counsel due to a conflict of interest and failure to withdraw once the conflict was discovered. *Id.*

25. That trial counsel provided ineffective assistance of counsel by failing to object to numerous instances of prosecutorial misconduct. *Id.* at 7.

26. That appellate counsel provided ineffective assistance of counsel for failing to challenge any of the erroneous jury instructions, but particularly Instruction No. 30. *Id.*

27. That trial counsel provided ineffective assistance of counsel for failing to undertake a pre-trial investigation of the case. *Id.*

28. That Defendant's Due Process rights were violated when he was charged in the indictment with aiding and abetting as to Counts 7 and 8, but the jury instructions did not contain the requisites for charging Defendant as a principal as to Counts 7 and 8. *Id.*

29. That the jury instructions allowed the jury to convict Defendant on a finding of reckless disregard rather than specific intent as to 18 U.S.C. §§ 241 and 242. *Id.* at 8.

30. That 18 U.S.C. §§ 241 and 242 are void for vagueness both facially and as applied to Defendant. *Id.*

31. That Instruction No. 24 erroneously made a determination that Defendant assaulted Bruce Mulcahy, which was a decision that should have been left to the jury. *Id.* at 16.

The United States filed its response to Defendant's section 2255 motion on December 20, 2013. D.E. 220. Defendant filed his reply on February 20, 2014. D.E. 224.

## II. DISCUSSION

### A. Right to Collateral Attack

Generally, a prisoner has a statutory right to collaterally attack his conviction or sentence. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) ("both the right to appeal and the right to seek post-conviction relief are statutory rights . . ."). For a federal prisoner to prevail on a 28 U.S.C. § 2255 claim, he must show that:

the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . .

28 U.S.C. § 2255(b). If the movant alleges a constitutional error, he must establish by a preponderance of the evidence, *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006), that the error "had a substantial and injurious effect or influence on the proceedings." *Watson*, 165 F.3d at 488 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). If the movant alleges a non-constitutional error, he "must establish a fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Id.* (internal quotations omitted).

### B. Procedural Default

A federal prisoner's failure to raise a claim on direct appeal, excepting claims of ineffective assistance of counsel, results in a procedural default of that claim. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). A procedurally defaulted claim may nonetheless obtain review if the prisoner can show cause to excuse his failure to raise the claim on direct appeal and actual prejudice resulting from the alleged violation. *Bousley*, 523 U.S. at 622; *Peveler*, 269 F.3d at 698–700. If the prisoner fails to establish cause, it is unnecessary to determine if he was prejudiced. *Bousley*, 523 U.S. at 623. If the prisoner is unable to show cause and prejudice, he may still be able to obtain review of his claims if his case fits within a narrow class of cases permitting review in order to prevent a fundamental miscarriage of justice, as when he submits new evidence showing that a constitutional violation has probably resulted in a conviction or one who is actually innocent. *Id.* at 622–23.

## 1. Sufficiency of Evidence

In grounds 1, 3, 9, 11, 16, and 18, Defendant challenges the sufficiency of the evidence presented at trial.[4]  Defendant alleges that "the government failed to put forward any evidence which proves any such conspiracy to deprive rights existed," "the government put forth insufficient evidence to prove the 'specific intent' element of 18 U.S.C. § 241," "the government put forth insufficient evidence to prove [Defendant] acted 'in contemplation of' any federal investigation or matter as required by Final Jury Instruction No. 30," "the government . . . failed to prove that [Defendant] intended to impede, obstruct or influence an investigation also required by Final Jury Instruction No. 30," "the government put forth insufficient evidence to prove the 'specific intent' element of 18 U.S.C. § 242," and "the government [did not] prove that [Defendant] acted willfully."  D.E. 205 at 2, 4, 5.

Defendant's ground 22 is his offering of cause for his failure to raise these claims on direct appeal: ineffective assistance of appellate counsel.  *Id.* at 6, 11.  "Attorney error amounting to constitutionally ineffective assistance of counsel may constitute cause to excuse a procedural default."  *Braggs v. United States*, 142 F.3d 432, at *2 (6th Cir. 1998) (Table).  Claims of ineffective assistance of appellate counsel are governed by the *Strickland* analysis.

To successfully assert an ineffective assistance of counsel claim, a defendant must prove both deficient performance and prejudice.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a defendant must prove ineffective assistance of counsel by a preponderance of the evidence).  In order to prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not

---

[4] The Court's numbering of Defendant's grounds for relief reflects the sequential order in which they appear in his Motion. The Court's list contains more grounds than Defendant's Motion as the Court interpreted several of Defendant's numbered items as containing multiple grounds for relief.  The Court has grouped the grounds for relief into several categories for ease of analysis and addresses the grounds for relief by category rather than sequential order.

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 688.  Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Notably, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

In order to prove prejudice, a defendant "must demonstrate that, but for counsel's poor performance, 'there is a reasonable probability' the result of his appeal would have been different." *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Strickland*, 466 U.S. at 694).  "Appellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit." *Id.* (citing *Greer v. Mitchell*, 264 F.3d 633, 676 (6th Cir. 2001)).  Further, "appellate counsel is not required to raise every non-frivolous issue on appeal." *Caver v. Straub*, 349 F.3d 340, 344 (6th Cir. 2003).  In order to prevail on grounds 1, 3, 9, 11, 16, and 18, Defendant must show, then, that each claim of insufficient evidence had a reasonable probability of success.

Sufficient evidence supports a conviction if, after viewing the evidence (and the inferences to be drawn therefrom) in the light most favorable to the prosecution, the court can conclude that any rational trier of fact would have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Apanovitch v. Houk*,

466 F.3d 460, 488 (6th Cir. 2006). "This requires successful challengers to meet a very high threshold." *Apanovitch*, 466 F.3d at 488 (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

Defendant alleges in his first claim that Instruction No. 11 charged the jury that they must find a conspiracy between *only* Defendant and McQueen. D.E. 205 at 12–13. Defendant states that the government instead offered evidence establishing a conspiracy between each defendant and others, but not between *solely* himself and McQueen. *Id.* at 13. However, Instruction No. 11 is merely a summary of Count 1 of the indictment that omits the names and actions of the co-defendants who were not on trial; it did not add or change the elements of the offense.

Even if Instruction No. 11 did require the United States to prove a conspiracy existed between *only* the two co-defendants, the United States put forth sufficient evidence to sustain its burden. Tonya Roberts testified that McQueen would find Defendant, regardless of who was assigned to work at the station, to assist him when alerted that a combative person was arriving at the Fayette County Detention Center where they worked. D.E. 184 at 26. This is evidence of a tacit understanding that when a combative person arrived, the two would work in tandem. Additionally, witnesses testified to incidents in which both Defendant and McQueen used excessive force, namely both incidents involving Mr. Embry and the incident involving Mr. Powers. D.E. 184 at 21–22 (Roberts); *Id.* at 154–55, 156 (Tyree); D.E. 186 at 244–45, 248–49 (Roberts). Thus, counsel's failure to raise this claim on direct appeal did not prejudice Defendant because it would not have been successful. This claim thus fails on its merits and because it is procedurally defaulted.

Defendant alleges in this third claim that the United States put forth insufficient evidence to prove that the purpose of the conspiracy was to interfere with a protected right, or that Defendant had that intent. D.E. 205 at 13–14. In addition to Mr. Tyree and Ms. Roberts, other

witnesses testified to incidents of use of excessive force on pretrial detainees perpetrated by Defendant, and the United States entered into evidence several video recordings reflecting these incidents.  D.E. 138; D.E. 183 at 57–58, 61–62 (Chumbley); D.E. 184 at 104–09 (Powers); D.E. 186 at 12–15 (Stranger).  Because the United States offered sufficient evidence to show Defendant's intent to deprive pretrial detainees of a protected right, by in fact doing so of his own volition, an appeal of this issue would not have been successful.  Thus, counsel's choice not to raise this argument on appeal did not give rise to prejudice, and this claim fails on its merits and because it is procedurally defaulted.

Defendant alleges in ground nine that the United States put forth insufficient evidence to prove that he falsified reports in contemplation of a federal investigation or matter as put forth in Instruction No. 30.  D.E. 205 at 4, 17–18.  He alleges in ground eleven that the United States put forth insufficient evidence to prove that he intended to impede, obstruct, or influence an investigation as put forth in Instruction No. 30.  *Id.*  He notes that the Sixth Circuit requires both intent to impede, obstruct, or influence an investigation as well as that the contemplation was undertaken at the time the false recordkeeping.  *Id.* at 17 (citing *United States v. Kernell*, 667 F.3d 746 (6th Cir. 2012)).  He states that testimony at trial reflected that "he, and everyone else, filled the reports out the same way every time, and that this" shows that he did not act in contemplation of a federal investigation.  *Id.*

The Sixth Circuit does not require a nexus between defendant's conduct and the federal investigation of the obstruction.  *United States v. Gray*, 692 F.3d 514, 519 (6th Cir. 2012). Knowing that a federal investigation *might* occur is sufficient to satisfy the "in contemplation" requirement.  *Kernell*, 667 F.3d at 755.  Defendant acknowledged during cross-examination that he understood that using unreasonable force could lead to a federal prosecution.  D.E. 185 at 53–

54. He acknowledged that he knew the difference between reasonable and unreasonable force. *Id.* at 53. As noted above, numerous witnesses testified consistently that Defendant used excessive force on pretrial detainees. Arnold Scott Tyree testified that Defendant had, at least in his mind, written the report on the intake of Bruce Mulcahy, which testimony showed involved excessive force, before it happened. D.E. 184 at 170. Tonya Roberts's testimony was consistent with Mr. Tyree's of this version of events. *Id.* at 6. Ms. Roberts also testified that the report written by Defendant regarding the Mulcahy incident contained false statements. *Id.* at 15–16.

In sum, testimony elicited at trial reflected that Defendant knew the difference between reasonable and unreasonable force, that he knew he could be federally prosecuted for use of unreasonable force, that he nonetheless employed unreasonable force on Bruce Mulcahy, a pretrial detainee, and that he falsified his report of the incident in order to avoid the report reflecting that he had used unreasonable force. Thus, the United States provided sufficient evidence that Defendant falsified reports in contemplation of a federal investigation, in order to obstruct a federal investigation, and had counsel raised these claims on appeal, he would have been unsuccessful. Therefore, Defendant did not suffer prejudice when counsel chose not to raise these claims on appeal, and counsel did not provide ineffective assistance of counsel as to this claim, rendering it meritless and procedurally defaulted.

Defendant alleges in grounds 16 and 18 that the United States put forth insufficient evidence to prove both that he had the specific intent required by 18 U.S.C. § 242 and that he acted willfully. D.E. 205 at 5, 19–20. He states that the United States was operating under the incorrect premise that reckless disregard for a person's protected rights was sufficient to show intent to interfere with an individual's protected rights, while it needed instead to show that Defendant had *specific* intent to violate the pretrial detainee's rights. *Id.* at 19–20. Defendant's

argument is that while showing that Defendant used excessive force, the United States failed to prove that Defendant used excessive force with the intent to violate the pretrial detainees' rights. *Id.* at 20. This argument can be summarized thusly: even accepting that Defendant used excessive force on pretrial detainees, the use of excessive force alone does not indicate that Defendant intended to violate detainee's protected rights.

Under Sixth Circuit case law, "willful" means "voluntarily and intentionally and with the specific intent to do something which the law forbids . . . that is to say, with bad purpose either to disobey or disregard the law." *Glenn v. Holder*, 690 F.3d 417, 422–23 (6th Cir. 2012) (internal citations and quotation marks omitted). Testimony at trial by Tonya Roberts indicated that Defendant's motivation for using excessive force on Mr. Mulchay, per Defendant himself, was that Mr. Mulcahy had stolen a sack lunch. D.E. 184 at 5–6, 8. As discussed above, testimony by Ms. Roberts and Mr. Tyree also reflected that Defendant planned his assault on Mr. Mulcahy. Taking this testimony in the light most favorable to the United States, a rational trier of fact could conclude that Defendant utilized excessive force simply because he was upset about a stolen sack lunch, which constituted a violation of Mr. Mulcahy's rights. He thus voluntarily and intentionally used excessive force on Mr. Mulcahy, and did so for a reason that does not justify the use of force. Had counsel raised this issue on appeal, it would not have had a reasonable probability of success. Therefore, counsel's decisions not to raise these issues on appeal did not prejudice Defendant, and these claims of ineffective assistance of counsel fail.

Defendant has not shown that "'there is a reasonable probability' the result of his appeal would have been different," and therefore his umbrella claim of ineffective assistance of appellate counsel in ground 22 fails. *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Strickland*, 466 U.S. at 694). Because Defendant has not shown prejudice, he has not

shown ineffective assistance of appellate counsel as to counsel's decision not to raise grounds 1, 3, 9, 11, 16, and 18 on direct appeal, Defendant has not shown cause to excuse his procedural default of these claims. The analysis above as to ground 22 also resolves Defendant's claims of ineffective assistance by counsel asserted in grounds 2, 4, 10, 12, 17, and 19. In each of these claims, Defendant argues counsel was ineffective for failing to challenge the substantive sufficiency of the evidence claims asserted in grounds 1, 3, 9, 11, 16, and 18. The Court has analyzed the substantive merits of each of these ground above and found that, because they lack merit, counsel was not ineffective for failing to pursue them nor was any prejudice caused thereby. Thus, Defendant's claims of ineffective assistance of counsel in grounds 2, 4, 10, 12, 17, and 19 fail as well.

## 2. Jury Instructions

In grounds 5, 13, 20, 28, 29, and 31, Defendant challenges various aspects of the jury instructions. Defendant alleges that "[e]rrors in Final Jury Instructions regarding [18 U.S.C. § 241] both lessened the government's burden of proof, and negated the basis for the jury's finding of 'specific intent,'" "Final Jury Instruction Nos. 29 and 30 contain erroneous statements which both confused and misled the jury, and negated the jury's requirement to decide whether the 'specific intent' element of [18 U.S.C. § 1519 was proven," "[e]rrors in the Final Jury Instructions regarding [18 U.S.C. § 242] both lessened the government's burden of proof, and negated the basis needed for the jury's finding of 'specific intent,'" "movant was charged in the Indictment and convicted of [18 U.S.C. § 2] – Aiding and abetting, however the Final Jury Instructions never explained what must be found for defendant to be charged as a principle under [18 U.S.C. § 242] or [18 U.S.C. § 1519]," "the Final Jury Instructions allowed the jury to substitute a finding of 'reckless disregard' to support a conviction, instead of a finding of specific

intent to violate a constitutional right," and that Instruction No. 24 improperly stated that Defendant assaulted Mr. Mulcahy, which was a determination within the realm of the jury's deliberation.  D.E. 205 at 2–3, 4, 5, 7, 8, 16.

As with his insufficiency of the evidence claims, Defendant offers ineffective assistance of appellate counsel, specifically in claim 26, to excuse the procedural default of these claims, and this constitutes his twenty-sixth ground for relief.  *Id.* at 7, 16.  Also keeping line with his insufficiency of the evidence grounds, Defendant has not shown that "'there is a reasonable probability' the result of his appeal would have been different."  *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Strickland*, 466 U.S. at 694).

As his fifth ground for relief, Defendant alleges that Instruction No. 14 impermissibly lowered the United States' burden of proof and "negated the basis for the jury's finding of 'specific intent'" in violation of Defendant's Due Process rights.  D.E. 205 at 2–3 (quoting D.E. 193 at 18).  His thirteenth ground alleges the same defects in Instruction Nos. 29 and 30.  *Id.* at 4.  His twentieth ground alleges the same defects in Instruction No. 22.  *Id.* at 5.  His allegation of error as to Instruction No. 14 is that it stated that "it is not necessary for the jury to determine that the defendants 'knew that their actions would violate anyone's protected rights.'"  *Id.* at 15.  As correctly noted by the United States, "the United States need not prove that the defendant actually knew it was a constitutional right being conspired against or violated."  D.E. 220 at 8 (citing *United States v. Brown*, 49 F.3d 1162, 1165 (6th Cir. 1995)).  While worded differently than the statement in *Brown*, Instruction No. 14 accurately presented the law, and Defendant has provided no authority to the contrary.  Had counsel raised this issue on appeal, it would not have had a reasonable probability of success.  Therefore, counsel's decisions not to raise this issue on appeal did not prejudice Defendant.

As for his thirteenth ground for relief, Defendant alleges that Instruction Nos. 29 and 30 negated the jury's requirement to find the specific intent necessary for a conviction under 18 U.S.C. § 1519.  D.E. 205 at 4, 19.  Defendant specifically highlights the statement, "The government is not required to prove that Defendant knew his actions where unlawful" in Instruction No. 29, and the statement "The government also is not required to prove that the Defendant knew his conduct would impede, obstruct, or influence an ongoing or potential federal investigation of a matter," in Instruction No. 30.  *Id.* at 19 (quoting D.E. 193 at 36, 37).

Regarding Instruction No. 29, the United States notes that the Ninth Circuit has approved a similar instruction.  D.E. 220 at 9 (citing *United States v. Jackson*, 186 F. App'x 736 (9th Cir. June 20, 2006)).  The reasoning of the Ninth Circuit in *Jackson* was that the instruction correctly defined "knowingly" in accordance with the Ninth Circuit Model Criminal Jury Instructions.  *United States v. Jackson*, 186 F. App'x 736, 738 (9th Cir. June 20, 2006).  On its face, 18 U.S.C. § 1519 does not require a defendant to know that his actions were unlawful.  It requires that he *knowingly* falsify a record, document, or tangible object *with intent* to obstruct a federal investigation.  *United States v. Schmeltz*, 667 F.3d 685, 687 (6th Cir. 2011).  It does not require that Defendant know that doing so is unlawful, which is in keeping with the general principle that ignorance of the law is not a defense to a violation of the law.  *United States v. Ali*, 557 F.3d 715, 726 (6th Cir. 2009) (citing *United States v. Baker*, 197 F.3d 211, 218 (6th Cir. 1999)) ("The mistake of law defense rests upon the 'deeply embedded' principles 'in our American legal tradition' that 'ignorance of the law is no excuse' for violating it and that 'citizens [are presumed] to know the requirements of the law.'").  Had counsel raised this issue on appeal, it would not have had a reasonable probability of success.  Therefore, counsel's decisions not to raise this issue on appeal did not prejudice Defendant.

Instruction No. 30 states that "[t]he government also is not required to prove that the Defendant knew his conduct would impede, obstruct, or influence an ongoing or potential federal investigation of a matter." D.E. 193 at 37. Defendant correctly notes that "the defendant can never with any certainty 'know' what will occur in the future." D.E. 205 at 19. That is perhaps one reason why the United States does not need to prove that Defendant knew his conduct would obstruct a potential investigation of a matter. The certain reason that the United States does not need to prove that Defendant knew his conduct would obstruct an ongoing or potential federal investigation is because the statute requires only that Defendant *have intent* to obstruct an ongoing or potential investigation. 18 U.S.C. § 1519. Having intent to do a thing is not the same as knowing one will accomplish that action. Instruction No. 30 correctly reflects this distinction. Defendant contends this Instruction negated elements one and two of section 1519, but he does not describe how. Had counsel raised these issues on appeal, they would not have had a reasonable probability of success. Therefore, counsel's decisions not to raise these issues on appeal did not prejudice Defendant.

As for Defendant's twentieth ground, his first allegation of error is that Instruction No. 22 contained the erroneous statement that "reckless disregard of a person's constitutional rights is evidence of specific intent to deprive that person of those rights." D.E. 205 at 15 (quoting D.E. 193 at 28–29). He states that the instruction lessened the United States' burden of proof. *Id.* Defendant has omitted some crucial parts of the full sentence, which reads:

> Because reckless disregard of a person's constitutional rights is evidence of specific intent to deprive that person of those rights, you may find that a defendant acted with the required specific intent even if you find that he had no real familiarly with the Constitution or with the particular constitutional right involved."

D.E. 193 at 28–29.  Despite Defendant's objection, the Sixth Circuit has approved an instruction on the same charge reading, in relevant part, "It is not necessary for you to find that the defendants were thinking in constitutional terms at the time of the incident, as a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights."  *United States v. Couch*, 59 F.3d 171, at *3 (6th Cir. 1995) (Table). These instructions, while arranged in grammatically different forms and containing different verbiage, state the same rule of law.  Thus, it is not reasonable to think that the Sixth Circuit would have reversed on the basis of this language when it did not do so when confronted with a similar instruction in *Couch*.  Had counsel raised this issue on appeal, it would not have had a reasonable probability of success.  Therefore, counsel's decisions not to raise this issue on appeal did not prejudice Defendant.

Defendant's second allegation of error as to Instruction No. 22 is that it erroneously included the statement that "[t]he government also is not required to show that the acts of the defendant were premeditated or of long duration."  D.E. 205 at 16 (quoting D.E. 193 at 29). Defendant claims that this statement relieved the United States of the requirement to prove specific intent.  *Id.*  As discussed above, reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.  Defendant has cited no case law to indicate that reckless disregard for a person's constitutional rights, or specific intent to violate a person's constitutional rights, requires premeditation or a long duration, nor has the Court uncovered any.  Had counsel raised this issue on appeal, it would not have had a reasonable probability of success.  Therefore, counsel's decisions not to raise this issue on appeal did not prejudice Defendant.

Defendant's final allegation of error as to Instruction No. 22 is that it contains the statement, "[E]vidence that an officer was motivated by some emotion, such as anger, that is not related to a legitimate law enforcement purpose can be considered evidence of willfulness." D.E. 205 at 16 (quoting D.E. 193 at 29).  Defendant states that this instruction does not take into account that fear or self-defense is an impediment to forming specific intent, and that the phrase "legitimate law enforcement purpose" was not explained to the jury, hence the jury did not know that "institutional security" is a legitimate law enforcement purpose.  *Id.*  Though Defendant frames his claims in the context of the third element of 18 U.S.C. § 242, willfulness, his claims are addressed as part of the requirement of the second element, deprivation of a federally protected right.  Instruction No. 21 allays Defendant's concerns.

Instruction No. 21 includes the following statement:

> While the law allows correctional officers to use force as part of a good-faith effort to further legitimate law enforcement and institutional purposes, *such as restoring order and defending themselves or others*, once a situation is under control, corrections officers are not permitted to continue using force for the purpose of punishing, retaliating against, or harming a pretrial detainee.

D.E. 193 at 26 (emphasis added).  By noting that correctional officers are allowed to use force in order to restore order and defend themselves or others, Instruction No. 21 instructs the jury that if they find that Defendant was using force in an effort to defend himself or others, or to address a state of disorder in the facility, they cannot find that Defendant deprived the victim of liberty without due process by subjecting the victim to unjustified force.  This is so because under those circumstances, force is justified.  Had counsel raised this issue on appeal, it would not have had a reasonable probability of success.  Therefore, counsel's decisions not to raise this issue on appeal did not prejudice Defendant.

As his twenty-eighth ground for relief, Defendant alleges that his due process rights were violated when he was charged in the indictment with aiding and abetting as to Counts 7 and 8, but the final jury instructions never explained what was necessary to be found guilty as a principal. D.E. 205 at 7–8. Defendant's allegation is simply untrue. Instructions Nos. 19–23, and 27–30 recite the elements necessary for convictions under 18 U.S.C. § 242 and 18 U.S.C. § 1519, respectively. D.E. 193 at 24–30, 34–37.

The United States interprets Defendant's twenty-eighth ground as also alleging error because of the omission of an instruction on aiding and abetting as to Counts 7 and 8. D.E. 220 at 10. As noted by the United States, this omission would inure to Defendant's benefit. Securing a conviction based on an aiding and abetting theory does not require the United States to prove that Defendant personally committed the crime. Sixth Circuit Pattern Jury Instructions 4.01. Given the omission of an instruction to that effect, the jury concluded that Defendant acted as a principal, *i.e.*, that he personally committed the crime, rather than that he intended to help commit or encouraged someone else to commit the crime. Because the jury found Defendant was liable as a principal, Defendant cannot show that he suffered prejudice from the lack of an instruction as to aiding and abetting. Had counsel raised this issue on appeal, it would not have had a reasonable probability of success. Therefore, counsel's decisions not to raise this issue on appeal did not prejudice Defendant.

Defendant's twenty-ninth ground for relief is that the jury instructions allowed the jury to substitute a finding of reckless disregard for specific intent. D.E. 205 at 8, 22. This is simply a re-wording of Defendant's twentieth ground for relief, discussed above. For the reasons discussed above as to ground 20, this claim also fails.

Finally, Defendant's thirty-first ground for relief is that Instruction No. 24 erroneously made a determination that Defendant assaulted Bruce Mulcahy, which was a decision to be made by the jury. D.E. 205 at 16. Defendant has omitted a critical part of the sentence in which that phrase is contained: "You have also *heard testimony* that after Defendant Clarence McCoy, assaulted Bruce Mulcahy, *as alleged in Count Seven*, he falsified an official report concerning his use of force." D.E. 193 at 31 (emphasis added). The instruction did not instruct the jury that Defendant had assaulted Mr. Mulcahy; it stated to the jury that it had heard testimony that supported the allegation contained in Count Seven, which, given the testimony at trial, was a statement of fact, not an assumption or suggestion. Defendant suffered no prejudice as to this claim. Had counsel raised this issue on appeal, it would not have had a reasonable probability of success. Therefore, counsel's decisions not to raise this issue on appeal did not prejudice Defendant.

Because Defendant has not shown prejudice, he has not shown ineffective assistance of appellate counsel as to counsel's decision not to raise grounds 5, 13, 20, 28, 29, and 31 on direct appeal, Defendant has not shown cause to excuse his procedural default of these claims. The analysis above as to ground 26 also resolves Defendant's claims of ineffective assistance by counsel asserted in grounds 6, 14, and 21. In each of these claims, Defendant argues counsel was ineffective for failing to challenge the substantive jury instruction error claims asserted in grounds 5, 13, and 20. The Court has analyzed the substantive merits of each of these ground above and found that, because they lack merit, counsel was not ineffective for failing to pursue them nor was any prejudice caused thereby. Thus, Defendant's claims of ineffective assistance of counsel in grounds 6, 14, and 21 fail as well.

### 3. Severance

In his seventh ground for relief, Defendant alleges that he was prejudiced by "spillover evidence" from the case against McQueen. D.E. 205 at 3. He names three examples of spillover evidence that he believed prejudiced the jury against him: "1) The Scott Howe incident 2) Both Lornell Embry incidents, 3) Any evidence that co-defendant McQueen caused others to change their incident reports." *Id.* Defendant did not raise this ground on direct appeal, and thus, unless he can show cause and prejudice, or that he is actually innocent, this ground is procedurally defaulted. *Bousley v. United States*, 523 U.S. 614, 622–23 (1998). Defendant offers no cause for why this claim was not raised on direct appeal. The Court will therefore not undertake an analysis as to prejudice. *Bousley*, 523 U.S. at 623. Therefore, this ground is procedurally defaulted and fails.

### 4. Unconstitutionality of 18 U.S.C. §§ 241, 242, and 1519

In ground for relief number 15, Defendant alleges that 18 U.S.C. § 1519 is facially void for vagueness. D.E. 205 at 4–5. In his thirtieth ground, he alleges that 18 U.S.C. §§ 241 and 242 are "overly and impermissibly vague, rendering both statutes unconstitutional, both facially and as applied to the defendant." *Id.* at 8. Defendant did not raise these grounds on direct appeal, and thus, unless he can show cause and prejudice, or that he is actually innocent, these grounds are procedurally defaulted. *Bousley v. United States*, 523 U.S. 614, 622–23 (1998). Defendant offers no cause for why these claims were not raised on direct appeal. The Court will therefore not undertake an analysis as to prejudice. *Bousley*, 523 U.S. at 623. Therefore, grounds 15 and 30 are procedurally defaulted and fail.

## C. Ineffective Assistance of Counsel

The remainder of Defendant's grounds for relief (grounds 8, 23–25, and 27) allege ineffective assistance of counsel, either at the trial or appellate level. To successfully assert an ineffective assistance of counsel claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a defendant must prove ineffective assistance of counsel by a preponderance of the evidence). In order to prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 688. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Notably, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. In order to prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on

the judgment." *Id.* at 691. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695. Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697.

## 1. Failure to Sever

As his eighth ground for relief, Defendant claims that counsel provided ineffective assistance of counsel when he did not move to sever his trial from that of McQueen. D.E. 205 at 3. Defendant states that spillover evidence, such as evidence of the Scott Howe incident, the two Lornell Embry incidents, and any evidence that McQueen caused others to change their incident reports, prejudiced him in the eyes of the jury. *Id.*

The standard to obtain a severance is a high one. *United States v. Driver*, 535 F.3d 424, 427 (6th Cir. 2008). Federal Rule of Criminal Procedure 14(a) permits a court to sever co-defendants' trials if joinder appears to prejudice a defendant or the United States. Fed. R. Crim. P. 14(a). The Sixth Circuit "has noted that, '[a]s a general rule, persons jointly indicted should be tried together,'" and that "'[a] request for severance should be denied if a jury can properly compartmentalize the evidence as it relates to the appropriate defendants.'" *Driver*, 535 F.3d at 427 (quoting *United States v. Causey*, 834 F.2d 1277, 1287 (6th Cir. 1987)).

In order for Defendant to prevail on this claim, he must show that counsel's failure to file a motion to sever constituted deficient performance. However, "counsel's failure to raise futile objections and arguments does not amount to constitutionally deficient performance." *Lyons v. Caruso*, 202 F.3d 269 (6th Cir. 1999) (Table). In his Motion, Defendant has offered no evidence that the jury was unable to compartmentalize the evidence against him and the evidence against McQueen. He has simply asserted that the introduction of evidence he believes would not have

been admitted into evidence at a severed trial as to only him prejudiced the jury against him in his joint trial with McQueen. In short, Defendant has offered no evidence that a motion to sever would have been anything other than futile. Thus, counsel did not perform deficiently by electing not to file a motion to sever. Absent deficient performance, the Court will not undertake an analysis as to prejudice, which means that Defendant has not shown that counsel provided ineffective assistance as to this claim. It therefore fails.

### 2. Conflict of Interest

As his twenty-third and twenty-fourth claims, Defendant alleges that counsel provided ineffective assistance at both the trial and appellate level because he had a conflict of interest and did not withdraw once the conflict was discovered. D.E. 205 at 6. Defendant claims that he gave Mr. Stephens, his counsel at trial and during his direct appeal, incriminating information against Mr. Capillo, a high-ranking official at the Fayette County Detention Center. *Id.* Defendant states that Mr. Stephens was a "close personal friend and former co-worker" of Mr. Capillo. *Id.* Defendant further states that once he expressed an interest in entering into plea negotiations, Mr. Stephens was obliged to alert counsel for the government that he had this information regarding Mr. Capillo, which he should have used in order to procure a better deal for Defendant. *Id.* Defendant states that Mr. Stephens chose to protect Mr. Capillo instead, and thus that the government did not learn of this incriminating information until Mr. Stephens withdrew following direct appeal and separate retained counsel took the information to the government. *Id.* He also states that at the point that retained counsel took the information to the United States, it was no longer useful as the statute of limitations had passed, protecting Mr. Capillo from prosecution. *Id.*

Defendant believes that if Mr. Stephens had used this information to Defendant's benefit during plea negotiations, Defendant would have received a sentence more in line with his co-defendants Kristine Lafoe and Scott Tyree, who were dismissed from the case (D.E. 123)[5] or received an 18-month term of incarceration (D.E. 147), respectively. The government counters that it offered Defendant two plea agreements, both of which were rejected without counteroffer, which, along with a statement made by counsel on the record, indicates that Defendant never seriously considered cooperating with the United States. D.E. 220 at 21–22. The United States also notes that Lafoe's sentence "reflects the fact that she did not use violence against pretrial detainees," and that Tyree's sentence "reflects the fact that he was less culpable than McCoy and had agreed to cooperate and testify at trial after accepting the very same deal that McCoy rejected." *Id.* at 23.

Additionally, the record reflects that Mr. Stephens did act on Defendant's information, albeit after trial. He filed a Motion for Order Authorizing Travel with the Sixth Circuit on October 6, 2010, stating that he had been told by Defendant that he might have "Rule 35(b) information."[6] D.E. 220-1. Mr. Stephens requested additional funds in order to travel to Defendant's place of designation to discuss the information that Defendant had. *Id.* Mr. Stephens noted that "such information perhaps should have been disclosed in an attempt at a pretrial plea," but noted that "[c]ounsel cannot say with certainty that the failure of any meaningful discussions with the Defendant concerning [U.S.S.G. 5K1.1][7] relief were not imbedded in the Defendant from his prior representation." *Id.*

---

[5] While the indictment as to Lafoe was dismissed, she pled guilty to a related information and received a sentence of 12 months of incarceration. *United States v. Lafoe*, 5:09-CR-84-KKC, D.E. 27.

[6] Federal Rule of Criminal Procedure 35(b) allows the government to make a motion to reduce a defendant's sentence if the defendant has "provided substantial assistance in investigating or prosecuting another person."

[7] U.S. Sentencing Guidelines Manual § 5K1.1 provides, in part, "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution or another person who has committed an offense, the court may depart from the guidelines."

Finally, even accepting Defendant's claim that the information was provided to his counsel before trial as credible despite the record and the history of plea negotiations offered by the United States, Defendant cannot show prejudice through Mr. Stephens's alleged failure to relay this information to the United States during plea negotiations. Defendant has not detailed exactly what information he possessed to implicate Mr. Capillo. Even if he had, the Court cannot evaluate the worth of the information to the United States, the Court cannot speculate what plea offer may been forthcoming from the United States in light of such assistance, and the Court cannot speculate whether or not Defendant would have accepted such an offer. Accordingly, these grounds for relief fail.

### 3. Prosecutorial Misconduct

As his twenty-fifth ground for relief, Defendant alleges that Mr. Stephens failed to object to "numerous examples of prosecutorial misconduct," and therefore provided ineffective assistance of counsel. D.E. 205 at 7. Defendant claims that the United States was impermissibly allowed to lead its witnesses to an excessive extent, and that the attorney for the United States used the word "assault" multiple times, which Defendant states was a question for the jury to decide, *i.e.*, whether or not certain actions were assaults. *Id.* at 23–24. Defendant states that the instances of the United States leading its witnesses "are too numerous to list," but includes sixteen instances as illustrations. *Id.* He also states that Mr. Stephens provided ineffective assistance of counsel when he did not object when counsel for McQueen agreed to allow counsel for the United States to lead witness Arnold Scott Tyree during a portion of his testimony. *Id.* at 7.

A defendant's due-process rights are only harmed if a prosecutor's improper comments "infected the trial with unfairness." *Parker v. Matthews*, 567 U.S. ___, 2012 WL 2076341, at *5

(June 11, 2012) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). Prior to *Parker*, the Sixth Circuit evaluated prosecutorial misconduct claims through the use of a four-factor test. *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001).

> These four factors are as follows: (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong.

*Id.* First, Defendant fails to address or establish the showing of unfairness required by *Parker*. Secondly, "[a]lthough the Supreme Court questioned the vitality of the Sixth Circuit's 'elaborate, multistep' test on habeas review," *Bowling v. Parker*, 2012 WL 2415167, at *14 (E.D. Ky. June 26, 2012), even these factors do not support Defendant's claims. Defendant relies upon numerous instances of purportedly prejudicial leading, but, each of the instances is isolated and does not create any significant prejudice. Moreover, the evidence against Defendant was very strong. Each of the instances is addressed below within the context of Defendant's claims of ineffective assistance of counsel.

The use of leading questions in direct examination is permissible for limited purposes under Federal Rule of Evidence 611(c), thus the mere use of leading questions during direct examination does not necessarily constitute prosecutorial misconduct. Use of leading questions by a prosecutor to direct a witness's attention to a particular individual or date or to clarify testimony is proper. *See United States v. Kuehne*, 547 F.3d 667, 692 (6th Cir. 2008). Additionally, at least one circuit has held that "the failure to object to leading questions and the like is generally a matter of trial strategy as to which [this court] will not second guess counsel." *Villanueva v. Stephens*, 555 F. App'x 300, 307 (5th Cir. 2014) (alteration in original).

As his first illustration of prosecutorial misconduct, Defendant cites the direct examination of witness Barry Buchignani. *Id.* at 205. Defendant avers that Mr. Buchignani could not identify Defendant as the officer who slammed him into the metal counter, until the attorney for the United States placed an "x" on Defendant in a photograph. *Id.* The United States offers that an "x" was placed on Defendant in the photograph by counsel for the United States because Defendant was "the guy closer to the computer" referenced in Mr. Buchignani's testimony. D.E. 220 at 24. The Court does not interpret the United States' actions as designed to mislead the jury or prejudice Defendant. Regardless of the exact circumstances, Mr. Buchignani was not the only person to testify that Defendant slammed Mr. Buchignani's head into a table. D.E. 183 at 61 (Chumbley); D.E. 184 at 146 (Tyree). Even if leading Mr. Buchignani constituted prosecutorial misconduct, counsel's failure to object to it does not create a reasonable probability of a different outcome. Thus, Defendant did not suffer prejudice from this incident.

Defendant's second instance is the following exchange:

Q. And in this exchange between you and this female officer, it went back and forth?

A. No, it just—when she said, "F you," I said, "F you" back, *and then they started to beat me*.

Q. And if you could tell the jury, how did this beating start?

D.E. 186 at 199 (emphasis added); D.E. 205 at 23. Defendant argues, erroneously, that the witness had not mentioned "beating" until the questioning attorney for the government asked how the beating began. D.E. 205 at 23. The witness plainly used the word "beat" before the attorney for the United States; this is not an instance of prosecutorial misconduct. Thus, Mr. Stephens did not provide ineffective assistance of counsel when he did not object to this questioning as prosecutorial misconduct.

Defendant's third instance of improper leading is an instance in which counsel for the United States asked witness Tonya Roberts "who slammed Mr. Embry on the counter?" D.E. 186 at 234; D.E. 205 at 24. Immediately prior to that question, Ms. Roberts testified that "[Mr. Embry] was given more directives to keep his hands flat on the counter. As he continued to move his hands, *he was slammed on the counter*." D.E. 186 at 234 (emphasis added). Again, the United States did not choose the witness's words. Thus, Mr. Stephens did not provide ineffective assistance of counsel when he did not object to this questioning.

Another exchange further in Ms. Robert's testimony is Defendant's fourth instance. Counsel for the United States asked Ms. Roberts, "What degree of force did Mr. McQueen use when he slammed him?" *Id.*; D.E. 205 at 24. She responded, "He used physical force. He used physical force." Counsel asked, "Was it a soft touch to the counter *or* a high degree of force?" *Id.* (emphasis added). D.E. 186 at 234. Ms. Roberts responded, "It was a high degree of force." *Id.* While this question was leading in that it suggested *an* answer, it also suggested more than one answer, meaning that Ms. Roberts could have seized upon the phrase "soft touch" as easily as "high degree of force." The Court also cannot fathom how the outcome of the trial as to Defendant could hinge on such a question asked of one of eleven witnesses for the United States. Defendant did not suffer prejudice through this questioning, thus he cannot prevail on an ineffective assistance of counsel claim based on counsel's choice not to object to the questioning.

Defendant's fifth instance occurs, again, during Ms. Roberts's testimony when counsel for the United States asked her, "And while [Mr. Embry] was secured to the counter, was there a point where Defendant McCoy and Officer Tyree responded?" D.E. 186 at 235; D.E. 205 at 24. The Court again cannot fathom how the outcome of the trial could hinge on this question posed to Ms. Roberts. She responded, "[y]es," and her only other options were, in one form or another,

"no," or "I don't know."  Neither of these would have been helpful to Defendant as the United States had video of the incident in question in the form of Exhibit 9-B.  D.E. 186 at 243.  Thus, the jury had other evidence from which to draw the same conclusion that Defendant and Tyree did, in fact, respond.  Hence, the outcome of the trial did not hinge on that exchange.  Defendant did not suffer prejudice through this questioning, thus he cannot prevail on an ineffective assistance of counsel claim based on the questioning.

Defendant's sixth instance of a purportedly improper leading question occurred when the attorney for the United States asked Ms. Roberts "Did you have a discussion about [the second Embry] incident and what you were going to write?"  D.E. 186 at 249; D.E. 205 at 24.  This question was not a leading question; it did not suggest an answer.[8]  An objection that the United States was leading the witness would have been futile, and "counsel's failure to raise futile objections and arguments does not amount to constitutionally deficient performance."  *Lyons v. Caruso*, 202 F.3d 269, at *3 (6th Cir. 1999) (Table).  Thus, Mr. Stephens did not perform his duties as counsel deficiently as to this questioning, and his choice not to object to the questioning did not constitute ineffective assistance of counsel.

Defendant's seventh instance of an allegedly improper leading question on the part of the United States occurred when counsel for the United States asked Ms. Roberts, "And with respect to any use of force that you were documenting, was there something else that you had to do to justify it?"  D.E. 186 at 250; D.E. 205 at 24.  Defendant neglects to include Ms. Robert's answer: "I'm sorry, could you repeat the question?"  D.E. 186 at 250.  Counsel for the United States then rephrases, "Any time you were writing about a use of force, did you have to justify it?"  *Id.*  As with the sixth instance above, this was not a leading question as it did not suggest an answer.

---

[8] "It is elementary that a leading question is one that suggests an answer."  *Woods v. Lecureux*, 110 F.3d 1215, 1221 (6th Cir. 1997).

Ms. Roberts could have answered "no" as easily as "yes," and neither answer was suggested to her by the question. An objection that the United States was leading the witness would have been futile, and "counsel's failure to raise futile objections and arguments does not amount to constitutionally deficient performance." *Lyons*, 202 F.3d 269, at *3. Thus, Mr. Stephens did not perform his duties as counsel deficiently as to this questioning, and his choice not to object to the questioning did not constitute ineffective assistance of counsel.

Defendant's eighth through sixteenth instances are all circumstances where counsel for the United States used the word "assault" when questioning a witness. D.E. 205 at 24. Assuming that characterizing the interactions between various inmates, such as Scott Howe, Mark Anthony Johnson, Bruce Mulcahy, Beau Powers, and Lonnell Embry, and Defendant and his co-defendants as assaults was prosecutorial misconduct, Defendant cannot show prejudice from Mr. Stephens's choice not to object to these instances. Even if counsel for the United States was disallowed the use of the word "assault" by the Court, the testimony of the witnesses and the videos entered as exhibits offer ample reason for the jury to conclude that these incidents were indeed assaults. Defendant cannot show that the outcome of the trial would have been different if Mr. Stephens had voiced the objections Defendant raises, and so has not shown prejudice. Thus, these claims of ineffective assistance of counsel all fail.

Finally, Defendant states that counsel was ineffective when he failed to object when counsel for McQueen agreed to let the prosecution lead witness Arnold Scott Tyree during a portion of his testimony. D.E. 205 at 7. Other than asserting that "Tyree was the main witness against Movant McCoy, not McQueen," Defendant has not shown how allowing the United States to lead Mr. Tyree on direct examination affected the outcome of the trial. Mr. Stephens may have decided not to object as a trial tactic, or, as apparently was true for counsel for

McQueen, in his professional estimation he saw no harm.  In any case, Defendant has not shown

that the outcome of his trial was adversely affected by counsel's failure to object to the leading

of Mr. Tyree on direct examination, and thus has not shown prejudice.  Therefore, this claim of

ineffective assistance of counsel also fails.

### 4. Pre-trial Investigation

Defendant's final allegation of ineffective assistance of counsel is that Mr. Stephens "was

ineffective for failing to investigate during his pre-trial preparation."  D.E. 205 at 7.  He further

states that this resulted in counsel not being prepared to cross-examine the United States'

witnesses and a failure to locate mitigating evidence.  *Id.*  He states that, absent counsel's failure

to investigate and to call certain witnesses, "the jury very likely could have acquitted."  *Id.* at 21.

Defendant explains that defense counsel should have called Tony Estep and the

Lexington-Fayette Urban County Government police officers who were involved in the Pinkston

and Buchignani incidents as witnesses.  *Id.*  He states that Mr. Estep would have testified about

the events leading up to and including the Mulcahy incident, which would refute the testimony of

Mr. Tyree and Ms. Roberts.  *Id.*  He also states that the police officers in question "could have

testified to both Pinkston and Buchignami's [sic] erratic and violent behavior while in their

custody . . . which would have explained to the jury why the movant reacted more quickly to the

detainee's [sic] balking, and resisting while in his custody."  *Id.*

When a defendant claims that his attorney failed to call a witness at trial, he must "[a]t

the very least . . . submit sworn affidavits from each of the individuals he has identified as

uncalled witnesses stating whether they were in fact available to appear at trial and able to give

testimony favorable to [the] defense."  *Talley v. United States,* No. 1:00-cv-74, 2006 WL

3422997, at *10 (E.D. Tenn. Nov. 27, 2006); *see also United States v. Ashimi,* 932 F.2d 643, 650

(7th Cir. 1991) ("Under whatever framework, however, evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.").  Having failed to present such affidavits, the Court cannot make any real assessment of how any testimony from the people named by Defendant would have affected the outcome of a trial.  The Court also notes that Mr. Estep was a co-defendant who entered into a plea agreement in a related case in which he admits that he "failed to intervene when Clarence McCoy assaulted D.P. by repeatedly using unjustified knee strikes at a time when D.P. was not resisting or posing a threat to any officers." *United States v. Estep*, 5:09-CR-83-KKC, D.E. 6 at 2.  Given this incriminating admission, counsel's choice not to call Mr. Estep was a reasonable strategic decision, and thus not an instance of deficient performance.

Defendant next claims that defense counsel should have "properly read and investigate[d] the various government [witnesses'] employee files which would have shown that several of the witnesses had been internally reprimanded by the detention center for excessive use of force and record keeping violations.  This would have helped to discredit their testimony in the jury's eyes."  D.E. 205 at 21.  Defendant does not name the witnesses to which he is referring, and the Court will not speculate as to their identities.  Without that information, the Court cannot evaluate what effect such testimony might have had on the outcome of the trial, and thus cannot undertake an analysis of whether or not Defendant was prejudiced by the omission.  Thus, this argument fails.

Defendant's final argument is that counsel did not review the grand jury testimony of government witnesses, and thus did not "properly [uncover] their untruthfulness regarding

material facts in one of their testimonies of the other." D.E. 205 at 21. Again, the Court does not know to which witnesses Defendant is referring. Therefore, the Court cannot evaluate the veracity of Defendant's argument that witnesses offered conflicting testimonies, nor can the Court evaluate whether Defendant suffered any prejudice. Thus, this argument fails, and all of Defendant's claims of ineffective assistance of counsel fail.

### III. CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 335–38 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *see Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissals on procedural grounds, as to when a Certificate of Appealability should issue, a movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

The Court has considered the issuance of a Certificate of Appealability as to each and every claim presented by Defendant. However, no reasonable jurist would find the assessments on the merits above to be wrong or debatable; thus, no Certificate of Appealability should issue. Moreover, many of Defendant's claims are procedurally barred, but no jurist of reason would

find that the question of whether the motion states a valid claim of the denial of a constitutional right is debatable. Nor would any jurist of reason find the correctness of the procedural rulings above to be debatable.

## IV. AN EVIDENTIARY HEARING IS NOT REQUIRED

In both his Motion and his reply, Defendant requests an evidentiary hearing. D.E. 205 at 1; D.E. 224 at 2. "An evidentiary hearing is required unless 'the record conclusively shows that the petitioner is entitled to no relief.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996)). Here, the record conclusively shows that Defendant is entitled to no relief. Thus, an evidentiary hearing is not required.

## V. RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that the District Court **DENY** Defendant's motion for 28 U.S.C. § 2255 relief. Because the record conclusively shows that Defendant is not entitled to relief, the Court need not conduct an evidentiary hearing. The Court also **RECOMMENDS** that the District Court **DENY** a Certificate of Appealability as to all claims.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of

further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 30th day of June, 2014.

Signed By:

Hanly A. Ingram

United States Magistrate Judge